IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

**Emma J. Foster,**                                                                                         **Plaintiff**

No. 2:11-CV-159-JMM

**Michael J. Astrue, Commissioner,**                                                          **Defendant**
**Social Security Administration**

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

In this case, plaintiff-claimant Emma J. Foster sought judicial review of defendant Commissioner Michael J. Astrue's denial of her application for supplemental security income (SSI). Foster asked the court to reverse the Commissioner's decision and remand her case to the Social Security Administration (SSA) for the award of benefits.[1] In the alternative, she asked the court to reverse the decision and remand her case for another hearing. After considering the record, the arguments of the parties, and the applicable law, this court affirms the Commissioner's decision.

**Scope of judicial review**. In reviewing a decision denying an application for disability benefits, the court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner made a legal error.[2]

---

[1]Docket entry # 2.

[2]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits is limited to whether the decision is 'supported by substantial evidence in the

Substantial evidence is more than a mere scintilla of evidence; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[3] In determining whether substantial evidence supports the Commissioner's decision, the court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports the decision, but the court may not reverse the Commissioner's decision simply because substantial evidence supports a contrary decision.[4]

**The disputed issues**. The parties do not dispute that Foster exhausted her administrative remedies[5] or that the Commissioner's administrative law judge (ALJ) followed the required five-step process for determining whether a SSI claimant is disabled.[6] Instead, the parties disagree about the following aspects of the Commissioner's decision:

---

record as a whole'"); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[3]*See Slusser*, 557 F.3d at 925.

[4]*See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

[5]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[6]*See* 20 C.F.R. § 416.920 (setting forth the five-step sequential evaluation process for determining whether a claimant is disabled and entitled to SSI).

 (1) the ALJ's determination about Foster's residual functional capacity (RFC);

 (2) the ALJ's determination that Foster could perform her previous work; and

 (3) the ALJ's evaluation of Foster's credibility.

Based on these complaints, Foster argued that substantial evidence does not support the Commissioner's conclusion that she was not disabled. Foster also maintained the Commissioner's decision does not comport with required legal standards.

 **The Commissioner's decision**. Before applying for disability benefits, Foster worked for two and a half years as a cook for a Wal-Mart deli.[7] Foster alleged she became disabled on August 1, 2007, but she also reported being laid off.[8] At that time, Foster was 57 years old.

 The record reflects very little in terms of other employment. Foster reported working for M.S. Express as a deli cook from 1999 to 2001, and for Dixie Food as a scaler-packer from July 1996 to May 1998.[9] In the latter job, Foster weighed hot dogs in a lab. Beyond that, the record reflects minimal earnings.[10]

---

[7] SSA record at pp. 100 & 105.

[8] *Id*. at p. 99 (stating that she was laid off in August 2007). Foster testified she was let go for an over-payment of food stamps. *Id*. at p. 30.

[9] *Id*. at p. 105.

[10] *Id*. at p. 93.

Foster applied for SSI on April 7, 2008,[11] and based her alleged disability on diabetes and rheumatoid arthritis.[12] The record does not support the allegation of rheumatoid arthritis. Foster complained about numb hands, painful feet, and weakening eyesight.[13]

After considering Foster's application, the ALJ determined that despite having severe impairments—hypertension, diabetes, osteoarthrosis, and obesity[14]—Foster had the RFC[15] to perform medium work, reduced by occasional bending, crouching, stooping, kneeling, crawling and climbing, and no climbing ladders, ropes or scaffolds.[16]

The ALJ consulted with a vocational expert and determined Foster could perform her past work as a cook.[17] Because the ALJ determined Foster could perform

---

[11] *Id*. at p. 90.

[12] *Id*. at p. 99.

[13] *Id*. at p. 99.

[14] *Id*. at p. 13.

[15] The Commissioner's regulations define RFC as "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1) (DIB) & 20 C.F.R. § 416.945(a) (SSI).

[16] SSA record at p. 14.

[17] *Id*. at p. 18.

her past work,[18] the ALJ concluded that Foster was not disabled under the Social Security Act.[19] The ALJ's decision became the final decision of the Commissioner for the purpose of judicial review pursuant to 42 U.S.C. § 405(g).

**Substantial evidence supports the Commissioner's decision**. The following substantial evidence supports the Commissioner's conclusion that Foster was not disabled: (1) treatment notes for diabetes, (2) treatment notes for hypertension, (3) evidence about weight, (4) treatment notes by Dr. Beata Majewski, (5) a physical RFC assessment, and (6) vocational expert testimony.

<u>Treatment notes for diabetes</u>. Foster was diagnosed with diabetes type II at least as early as December 19, 2006.[20] Type II diabetes is the most common form of diabetes. It is "considered a milder form of diabetes because of its slow onset…and because it frequently can be controlled with diet and oral medication."[21] The diagnosis of diabetes

---

[18] *See* 20 C.F.R. § 416.920(a)(4)(iv) (" At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.").

[19] SSA record at p. 18. To be disabled under the Social Security Act, a claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

[20] SSA record at p. 176. Foster may have been diagnosed earlier, but earlier medical records are mostly illegible.

[21] 2 The Gale Encyclopedia of Med. 1347 (4th ed.).

supports the ALJ's determination that Foster is impaired by diabetes.

The treatment notes for diabetes support the ALJ's RFC determination because the notes documented no serious complications. Although diabetes type II can often be controlled with diet alone, or diet and medication, untreated type II diabetes can result in numerous serious health problems—*i.e.*, "kidney failure, heart disease, stroke, limb amputation, and blindness."[22] In some cases, insulin injections are needed if diet and oral medication fail to maintain normal glucose levels.[23]

Foster's doctors prescribed oral medication, recommended a low caloric diet for weight loss,[24] and encouraged Foster to exercise.[25] Doctors documented no symptoms signaling the complication of Foster's diabetes—*e.g.*, foot ulcers, slow-healing wounds, gum infections, blurred vision, heart disease, or urinary tract infections. Foster's prescribed treatment plan, and the lack of documentation of serious complications,

---

[22]*Id*. at p. 1346.

[23]*Id*. at pp. 1347 & 1350.

[24]SSA record at p. 171 (on Dec. 20, 2007, characterizing Foster's diabetes as uncontrolled and prescribing 1800 calorie diet); p. 201 (on July 26, 2008, stressing the "importance of sodium intake, saturated fat and cholesterol, caloric balance, sufficient intake of complex carbohydrates, fiber, calcium and iron"); p. 204 (on Aug. 16, 2008, encouraging Foster to change her diet); p. 219 (on May 26, 2009, instructing Foster to decease sugar intake and diet).

[25]*See id.* p. 207 (on July 26, 2008, stressing the "importance of regular exercise"); p. 204 (on Aug. 16, 2008, stressing the importance of 30-45 minutes of exercise most days of the week); p. 219 (on May 26, 2009, instructing Foster to exercise).

support the ALJ's determination about Foster's RFC because nothing supported a reduced RFC.

<u>Treatment notes for hypertension</u>.  Foster was diagnosed with hypertension, or high blood pressure, at least as early as August 3, 2006.[26]  "Hypertension is serious because people with the condition have a higher risk for heart disease and other medical problems than people with normal blood pressure."[27]  The diagnosis of hypertension supported the ALJ's determination that hypertension was a serious impairment.

The treatment notes for hypertension support the ALJ's RFC determination because the notes document no serious complications.  The goal of treating hypertension is to lower blood pressure,[28] because untreated hypertension can lead to arteriosclerosis, heart attack, stroke, enlarged heart, and kidney damage.[29]  "Treatment to lower blood pressure may include changes in diet, getting regular **exercise**, and taking anti[-]hypertension medications."[30]  "The key to avoiding serious complications

---

[26]*Id*. at p. 3.

[27]3 The Gale Encyclopedia of Med. 2215 (4th ed.).

[28]*Id*. at p. 2217.

[29]*Id*.

[30]*Id*. at p. 2217 (emphasis in source).

7

of hypertension is to detect and treat it before damage occurs."[31]

Foster's doctors recommended changing Foster's diet and getting regular exercise, and prescribed anti-hypertension medications.[32] Doctors documented no serious complications. The treatment notes showed that Foster's blood pressure improved with medication compliance,[33] although Foster was not always compliant.[34] The treatment notes support the ALJ's determination because "[a]n impairment which can be controlled by treatment or medication is not considered disabling."[35] Nothing in the treatment notes supported a reduced RFC.

<u>Evidence about weight</u>. Foster is 5 feet tall.[36] Treatment notes documented her

---

[31]*Id*. at p. 2218.

[32]SSA record at pp. 205-07 (on July 26, 2008, giving Foster clonidine; stressing moderation in sodium intake, saturated fats and cholesterol; and recommending regular exercise); *id*. at p. 204 (on Aug. 16, 2008, prescribing Hydrochlorothiazide, encouraging decrease in caloric intake, and stressing the importance of regular exercise).

[33]*Id*. at p. 174 (on June 13, 2007, hypertension was uncontrolled); p. 172 (on Aug. 17, 2007, normal blood pressure); p. 171 on Dec. 20, 2007, normal blood pressure); p. 187 (on May 20, 2008, high blood pressure); p. 204 (on Aug. 16, 2008, good blood pressure); p. 219 (on May 26, 2009, good blood pressure); p. 218 (on June 9, 2009, noting medication compliance and normal blood pressure). "Blood pressure lower than 120/80 mm Hg is considered normal." 3 The Gale Encyclopedia of Med. 2216 (4th ed.).

[34]SSA record at p. 219 (on May 26, 2009, characterizing Foster as non-compliant patient); p. 217 (on July 21, 2009, annotating chart with non-compliant patient).

[35]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[36]SSA record at p. 28.

weight as averaging 196 pounds. A person with that height and weight has a body mass index (BMI) of 38.3. A person with BMI over 25 is considered obese.[37] Foster's weight showed that she was obese.

Evidence about Foster's weight support the ALJ's determination that Foster's ability to work was impaired by obesity. Because obesity can cause functional limitations "in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling,"[38] evidence about Foster's weight also supports the ALJ's RFC determination limiting Foster to occasional bending, crouching, stooping, kneeling, crawling, and restricting Foster from climbing ladders, ropes or scaffold.

<u>Dr. Majewski's treatment notes</u>. Dr. Majewski is a rheumatologist. Foster complained to Dr. Majweski about pain and swelling in her left ankle and left hand, and severe pain in the fingers of her left hand.[39] Dr. Majewski ordered a rheumatoid factor test to determine whether Foster had rheumatoid arthritis and started Foster on

---

[37]"Individuals with BMI's over 25 are considered to be obese because this is the BMI level above which health risks increase." 10-78A Attorneys' Textbook of Med. (3d ed.) P 78A.00. *But see* 4 The Gale Encyclopedia of Med. (4th ed.) 3116 (characterizing a BMI of over 30 as obese).

[38]Social Security Ruling 02-1p: Policy Interpretation Ruling on Titles II & XVI: Evaluation of Obesity at ¶ 8, effective Sept. 12, 2002. *See* 4 The Gale Encyclopedia of Med. 3116 (4th ed.) (describing how obesity stresses the body's organs and increases the risk of problems like fatigue and poor physical fitness).

[39]SSA record at p. 160.

methotrexate.[40]

Lab results were negative for the rheumatoid factor,[41] so Dr. Majewski diagnosed Foster with inflammatory arthritis, seronegative.[42] This diagnosis supports the ALJ's determination that Foster was impaired by osteoarthrosis,[43] the most common joint disorder.[44] Dr. Majewski's treatment notes also support the ALJ's determination that Foster can work because Dr. Majewski reported that Foster had improved with methotrexate, stating, "Functionally, she is doing reasonably well…"[45] Nothing in the treatment notes supported a reduced RFC.

<u>A physical RFC assessment</u>.  The record includes a physical RFC assessment by Dr. Lucy Sauer.  In the assessment, Dr. Sauer opined that Foster could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for a total of 6 hours in an 8-hour workday; and sit for a total of 6 hours in a normal 8-hour

---

[40]*Id*. at p. 161.  One use of methotrexate is to treat rheumatoid arthritis.

[41]*Id*. at p. 165.

[42]*Id*. at p. 157.  The absence of the rheumatoid factor distinguishes a seronegative arthritis from rheumatoid arthritis.

[43]*Id*. at p. 13.

[44]Osteoarthrosis is another name for osteoarthritis.  *See* 4 The Gale Encyclopedia of Med. 3181 (4th ed.) (describing osteoarthritis as the "oldest and most common types of arthritis that mostly affects the cartilage").

[45]SSA record at p. 157.

workday.[46] The opined abilities were consistent with medium work.[47] The consistency supports the ALJ's determination that Foster could perform medium work.

<u>Vocational expert testimony</u>. The vocational expert testified that a person with Foster's RFC could perform her past work as a cook.[48] The vocational expert's testimony supports the ALJ's determination that Foster could work as a cook, and thus, that Foster was not disabled.

**The Commissioner's decision comports with applicable legal standards**.

<u>The RFC determination</u>. Foster complained about the ALJ's interpretation of evidence about her activities of daily living, and argued that her activities do not support a finding that she can do medium work.[49] She maintained that the consulting, examining doctor indicated she had more impairments than the ALJ found. She also complained that the RFC determination did not incorporate limitations flowing from arthritis in her hands.

"A claimant's RFC represents the most he can do despite the combined effects of

---

[46]*Id*. at p. 195.

[47]*See* 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.").

[48]SSA record at p. 41.

[49]Docket entry # 16, p. 8.

all of his credible limitations and must be based on all credible evidence."[50]  "In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments."[51]  The ALJ, however, is not required "to mechanically list and reject every possible limitation."[52]

Foster initially reported that she could make her bed, iron, shop, and attend church.[53]  She later testified that she could hardly get around because of her left leg[54] and that she could not button a garment or tie a shoelace with her left hand.[55]  After a physical examination, a consultative physician reported that Foster could not squat or rise from a squatting position.[56]  This evidence supports Foster's allegation of disability, but the court may not reverse the Commissioner's decision simply because evidence

---

[50]*McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).

[51]*Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

[52]*McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).

[53]SSA record at p. 113.

[54]*Id*. at p. 35.

[55]*Id*. at p. 37.

[56]*Id*. at p. 190.

supports a contrary decision.[57] Instead, the court must defer to the ALJ's findings if supported by substantial evidence. Here, substantial evidence supports the ALJ's findings.

In determining RFC, the ALJ must first determine the applicant's credibility,"[58] and then determine a claimant's RFC based on all relevant evidence.[59] The ALJ in this case evaluated Foster's credibility and found her allegations about her limitations partially credible.[60] The unfavorable decision shows the ALJ considered all relevant evidence. For example, the consultative examiner found that Foster could hold a pen and write, pick up a coin, and touch her fingertips to her palm.[61] This finding contradicted Foster's report that she could not button a garment or tie a shoelace. The consultative examiner also found that Foster could stand and walk without assistive devices and assessed Foster's ability to walk, stand, sit, lift, carry, handle and finger as moderate.[62] Foster's treating physician found a full range of motion in all extremities

---

[57]*See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

[58]*Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005).

[59]*Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001).

[60]SSA record at pp. 15-17.

[61]*Id*. at p. 190.

[62]*Id*. at p. 191.

with crepitance (crunching with bending) in left knee,[63] and encouraged Foster to exercise.[64] This evidence contradicted Foster's testimony she could hardly get around.

To the extent Foster argued that postural limitations were inconsistent without limitations on standing and walking,[65] that argument fails for at least two reasons. First, the ALJ limited Foster to up to six hours in an eight-hour workday. Second, Foster had a negative Romberg's test.[66] Foster alleged she was so impaired that she could not work, but the ALJ cited substantial, competent medical evidence supporting the RFC determination. The ALJ did not err in determining Foster's RFC.

<u>The determination that Foster could perform her previous work</u>. Foster contended that her description of her past work exceeded the demands of a short-order cook. She argued that her work was closer to a fry cook. Because she maintained the ALJ used an erroneous job description in the unfavorable decision, she asked the court to remand this case for re-evaluation.

---

[63]*Id*. at p. 214.

[64]*Id*.

[65]*See* docket entry # 16, p. 9.

[66]SSA record at p. 190. "The Romberg test assesses the ability of the patient to stand erect without swaying or falling." 9-307 Proving Med. Diagnosis & Prognosis (Scope). "A normally functioning patient should be able to hold the Romberg position for 15 seconds without falling or significant swaying, in which case the Romberg test is said to be negative." *Id*. at § 307.05.

In determining whether a claimant can do her past work, a "vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy."[67] In this case, the ALJ consulted a vocational expert. After considering Foster's description of her past work, and considering various job descriptions in the Dictionary of Occupational Titles (DOT), the vocational expert testified that Foster could perform her past relevant work as a short-order cook, DOT code 313.374-014.[68] Foster's description of her work was consistent with the DOT's description of a short-order cook.[69] The ALJ did not err in determining that Foster could do her past work.

<u>The ALJ's evaluation of Foster's credibility</u>. Foster asserted that the ALJ did not adequately explain why the medical evidence was inconsistent with her allegations of

---

[67] 20 C.F.R. § 416.960(b)(2).

[68] SSA record at p. 40-41.

[69] *Compare* SSA record at pp. 29-32, 105 & 108 (explaining that she cooked at a deli and handled cold cuts and pans with food), *with* Dictionary of Occupational Titles, code 313.374-014 ("Prepares food and serves restaurant patrons at counters or tables: Takes order from customer and cooks foods requiring short preparation time, according to customer requirements. Completes order from steamtable and serves customer at table or counter....Carves meats, makes sandwiches, and brews coffee. May clean food preparation equipment and work area. May clean counter or tables.").

pain.[70] She suggested that the medical evidence showed that she was disabled. Foster's complaint challenges the ALJ's evaluation of her credibility.

"In assessing a claimant's credibility, an ALJ must consider all of the evidence related to the subjective complaints, the claimant's daily activities, observations of third parties, and the reports of treating and examining physicians."[71] "The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole."[72]

In this case, the ALJ addressed all required considerations:[73] Foster's past work, Foster's treatment records, her description of her daily activities, allegations of pain and other symptoms, the use of medication, and limitations flowing from Foster's conditions. Although Foster maintained the ALJ failed to explain why the medical evidence was inconsistent with her allegations of pain, the ALJ's opinion reflects the opposite.

---

[70] Docket entry # 16, p. 11.

[71] *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

[72] *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

[73] In considering the credibility a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

The opinion reflects a careful comparison Foster's allegations with the medical evidence and includes a reasoned explanation about why the medical evidence did not support Foster's allegations. For example, Foster alleged her conditions affected her ability to lift, stand, walk, sit, climb stairs, kneel, squat, use her hands, see, bend, remember, and complete tasks,[74] but the ALJ reasoned that "although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative."[75] The ALJ observed that Foster did not take any narcotic based pain relieving medication in spite of the allegations of quite limiting pain."[76] The record supports the ALJ's reasoning. No medical evidence substantiated Foster's allegation of disabling symptoms, not even her most recent examination—an examination she sought to support her allegations.[77] The ALJ did not err in evaluating Foster's credibility.

**Conclusion**. Having determined that substantial evidence supports the Commissioner's denial of Foster's application, and the Commissioner made no legal error, the court DENIES Foster's request for relief (docket entry # 2) and AFFIRMS the

---

[74]SSA record at p. 118.

[75]*Id*. at p. 17.

[76]*Id*.

[77]*Id*. at p. 214 (indicating Foster requested a physical for disability).

Commissioner's decision.

    It is so ordered this 1st day of August, 2012.

                                                                                       _____
                                                                                       United States District Judge